OPINION
HOWE, Judge:
¶ 1 The Arizona Department of Revenue (“Department”) and Maricopa County (“County”) appeal the tax court’s summary judgment in favor of Sundevil Power Holdings, LLC (“Taxpayer”) for tax years 2013, 2014, and 2015. The Department and the County argue that the court erred in granting summary judgment because it incorrectly applied A.R.S. § 42-14156 (“valuation statute”) and erred in allowing Taxpayer’s 2013 amended complaint to relate back to the date of the original complaint. Because the tax court did not err in interpreting the valuation statute, but did err in allowing the Taxpayer’s 2013 amended complaint to relate back, we affirm with respect to the 2014 and 2015 appeals, but reverse with respect to the 2013 appeal.
FACTS AND PROCEDURAL HISTORY
¶ 2 The Gila River Power Station (“facility”) was constructed between 2001 and 2003 and consists of four identical power generation blocks. In 2005, the facility’s original owners sought bankruptcy protection, and as a result, the bankruptcy court transferred the facility’s ownership to Gila River Power LLC. At the time of transfer, the bankruptcy court approved a valuation for the facility based on an independent appraisal of the land on which the facility operated, the real property improvements to the facility, and the personal property in the facility. Since 2005, the Department’s valuation of the facility for tax purposes has been based on the value the bankruptcy court has ascribed to the facility’s real property improvements and personal property, which are known as Gila River’s “book costs,” and the land’s value as of December 31 of the preceding year.
¶3 In 2010, Gila River sold to Taxpayer one of the facility’s four power blocks and a 25% interest in the facility’s common generation facilities, and in 2011, it sold to Taxpayer another power block and an additional 25% interest. Thus, Gila River and Taxpayer each own 50% of the facility and common generation facilities. As part of the sale agreements, Gila River provided Taxpayer a copy of its book costs.
¶4 For tax year 2012, when Taxpayer owned a 25% interest in the facility, Taxpayer reported to the Department Gila River’s book costs for purposes of valuing the property. The Department valued Taxpayer’s 25% interest based on Gila River’s book costs under A.R.S. § 42-14156(A)(6)(d)(i), which provides that if the buyer has the “cost information,” the property’s valuation should continue as if no change in ownership occurred. For tax year 2013, when Taxpayer owned a 50% interest, Taxpayer again reported Gila River’s book costs to the Department. But this time, Taxpayer received tax documents with different full cash values for the facility, resulting in an approximately $1 million increase in value. Instead of valuing the facility under subsection (d)(i), the Department valued it under (d)(ii), which provides that if the buyer does not possess the cost information, the acquisition cost in an arm’s length transaction should be used. A.R.S. § 42-14156(A)(6)(d)(ii).
¶ 5 Taxpayer contacted the Department and received updated tax documents, which reflected the higher full cash value for the facility as valued under subsection (d)(ii). The Department issued a notice of decision with the final full cash value as the higher amount for tax year 2013, Taxpayer appealed to the Board of Equalization, and the Board affirmed. Taxpayer timely appealed that determination to the tax court on January 11, 2013, naming only the Department as defendant. Four months later, the Department answered, but also moved to strike a portion of the complaint. Taxpayer responded soon after, but on May 14, the Department moved to dismiss the complaint for, as relevant, Taxpayer’s failure to name and serve an indispensable party—Maricopa County, the county in which the facility was located. Taxpayer opposed the motion, arguing that the County did not need to be named a defendant to an action challenging the valuation of the facility because the tax was not yet due. *342 Taxpayer nonetheless concurrently moved to add the County as a party pursuant to Arizona Rule of Civil Procedure 15(c).
¶ 6 The Department responded that Taxpayer could not add the County because the 60-day limitations period under A.R.S. § 42-16203(C) plus 120-day service period under Arizona Rule of Civil Procedure 4(i) had elapsed. Taxpayer replied that the proposed amendment nevertheless satisfied the requirements for relation back under Rule 15(c) because within the relevant time period, the County had sufficient notice to avoid prejudice in defending the merits and knew or should have known that it would have been named a party but for Taxpayer’s mistake.
¶ 7 Taxpayer also argued that the Department should be estopped from asserting its argument because it had waited until the relevant time period had elapsed before filing its motion to dismiss. The Department had sought several extensions to file its answer, had filed numerous papers with the court, and had conversations with opposing counsel, but then waited until the time period expired before asserting that the County was a necessary party. Taxpayer further alleged that had the Department complied with Arizona Rule of Civil Procedure 12(b) to timely disclose its defenses, Taxpayer would have promptly added and served the County within the relevant time period. After oral argument, the tax court withheld ruling on the pending motions and allowed Taxpayer to conduct discovery on whether the County had notice.
¶8 While the tax year 2013 appeal was pending, Taxpayer appealed its tax year 2014 full cash value directly to the tax court in October 2013. This appeal named both the Department and the County as defendants. Taxpayer then moved to consolidate the appeals over the Department and the County’s objection, but the tax court denied the motion. The parties subsequently moved and cross-moved for partial summary judgment and summary judgment on whether the Department correctly applied A.R.S. § 42-14156 to Taxpayer’s facility for tax years 2013 and 2014.
¶ 9 Meanwhile, after discovery for the tax year 2013 appeal had concluded, the tax court granted Taxpayer’s motion to amend the tax year 2013 complaint. The court ruled that the County had received notice sufficient to satisfy Rule 15(c). The court also concluded that neither the Department nor the County suffered prejudice by allowing relation back, but urged counsel “to make sure taxing jurisdictions are propei’ly named in any action for a refund.” Taxpayer filed and served an amended complaint to the County. The County then unsuccessfully moved to dismiss for lack of subject matter jurisdiction and failure to name and serve an indispensable party.
¶ 10 After briefing and oral argument on the summary judgment motions, the tax court granted Taxpayer’s motion for summary judgment and denied the Department’s cross-motion for summary judgment. The court concluded that the Department should have valued Taxpayer’s facility under subsection (d)(i), not (d)(ii). The court found that because Taxpayer “ ‘acquired’ the facility ‘from another taxpayeri and that [it] ‘ha[d] possession of the cost information’—in this case the cost of Gila River Power Station’s ‘acquiring the property in an arm’s length transaction’—the valuation [wa]s controlled by [subsection (d)(i) ].” The court also found that although the information Taxpayer received when it acquired the facility did not contain the details that the original owners might presumably have possessed, it was still “cost information” as used in subsection (d).
¶ 11 Taxpayer then appealed its tax year 2015 full cash value directly to the tax court, naming both the Department and the County as defendants. After receiving the court’s ruling for the tax year 2013 appeal, the parties agreed to consolidate the appeals for tax years 2013, 2014, and 2015. The court subsequently issued a judgment—with language reserving the Department and the County’s rights to pursue an appeal—and then an amended judgment awarding attorneys’ fees and costs to Taxpayer. The Department and the County appealed the amended judgment. After the tax court entered the final judgment with Arizona Rule of Civil Procedure 54(c) finality language, the appeal proceeded.
*343 DISCUSSION
1. The Valuation Statute
¶ 12 The Department argues that the tax court incorrectly applied the substantive law to the undisputed facts by interpreting the cost of acquiring a facility in an arm’s length transaction as “cost information” in A.R.S. § 42-14156. Summary judgment may be granted when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(c)(1). When the material facts are undisputed, our role is to determine whether the tax court correctly applied the substantive law to those facts. Duke Energy Arlington Valley, LLC v. Ariz. Dep’t of Revenue, 219 Ariz. 76, 77 ¶ 4, 193 P.3d 330, 331 (App.2008). We review de novo the tax court’s grant of summary judgment. Scottsdale/101 Assocs., LLC v. Maricopa County, 238 Ariz. 291, 292 ¶ 7, 359 P.3d 1035, 1036 (App.2015). We likewise review de novo the tax court’s construction of applicable statutes. See Chevron U.S.A. v. Ariz. Dep’t of Revenue, 238 Ariz. 519, 520 ¶ 6, 363 P.3d 136, 137 (App.2015).
¶ 13 The primary goal in statutory interpretation is to effectuate the Legislature’s intent, General Motors Corp. v. Maricopa County, 237 Ariz. 337, 339 ¶ 8, 350 P.3d 841, 843 (App.2015), with the statute’s plain language as the most reliable indicator of its meaning, Sempre Ltd. P’ship v. Maricopa County, 225 Ariz. 106, 108 ¶ 5, 235 P.3d 259, 261 (App.2010). We consider the statute as a whole, including its context within a broader statutory scheme. General Motors, 237 Ariz. at 339 ¶ 8, 350 P.3d at 843. A statute “is to be given such an effect that no clause, sentence or word is rendered superfluous, void, or contradictory or insignificant.” Guzman v. Guzman, 175 Ariz. 183, 187, 854 P.2d 1169, 1173 (App.1993). We generally “liberally construe statutes imposing taxes in favor of taxpayers.” CCI Europe, Inc. v. Ariz. Dep’t of Revenue, 237 Ariz. 50, 52 ¶ 8, 344 P.3d 352, 354 (App.2015). As discussed below, because the tax court correctly applied the substantive law to the facts, Taxpayer was entitled to judgment as a matter of law on the 2014 and 2015 appeals. Accordingly, the tax court did not err in granting summary judgment in Taxpayer’s favor and denying summary judgment to the Department and the County for the 2014 and 2015 appeals.
¶ 14 In Arizona, an “electric generation facility” is “all land, buildings and personal property that is situated in this state and that is used or useful for the generation of electric power.” A.R.S. § 42-14156(B)(l). The valuation of these facilities is the sum of the values of (1) the land used in operating the facility, (2) the real property improvements to the facility, and (3) the personal property in the facility. AR.S. § 42-14156(A)(l)-(3). Specifically, the value of land is “the cost to the current owner as of December 31 of the preceding calendar year”; the value of real property improvements is “the cost multiplied by valuation factors prescribed by tables adopted by the department”; and the value of personal property is “the cost multiplied by the valuation factors as prescribed by the department” with adjustment for the assessment year. A.R.S. § 42-14156(A)(l)-(3). For purposes of valuation, the statute lists the following methods for determining cost:
(a) “Cost” means the cost of constructing the property or acquiring the property in an arm’s length transaction.
(b) The cost of personal property is the invoice cost of the personal property, the cost of transporting the property to the facility site and the cost of labor to install the property, plus any transaction privilege or use taxes paid.
[[Image here]]
(d) In the case of a facility that is acquired from another taxpayer:
(i) If, after the acquisition, the buyer has possession of the cost information, the valuation of the facility shall continue based on the seller’s cost as if there were no change in ownership, except for land as provided in subsection A, paragraph 1.
(ii) If, after the acquisition, the buyer does not possess the cost information, the acquisition cost in an arm’s length transaction shall be used.
A.R.S. § 42-14156(A)(6)(a)-(d).
¶ 15 The Department argues that “cost information” as used in subsection (d) refers *344 to the property’s original cost information and because Taxpayer does not possess that information, the appropriate starting point for valuing the facility is the cost of the arm’s length transaction between Taxpayer and Gila River. But our reading of the statute’s plain language is that “cost information” refers to the seller’s cost of constructing the property or acquiring it in an arm’s length transaction. Accordingly, because Taxpayer possesses information showing Gila River’s cost of acquiring the properties in an arm’s length transaction from the original owners, the Department should have valued Taxpayer’s interest in the facility using subsection (d)(i), not (d)(ii).
¶ 16 The valuation statute expressly defines “cost” in subsection (a). Consequently, the “cost information” in subsection (d) refers to the information regarding either the cost of constructing the property or acquiring that property in an arm’s length transaction. Further, because subsection (d) expressly refers to the “seller’s cost” in stating that the “valuation of the facility shall continue based on the seller’s cost as if there were no change in ownership,” the “cost information” as used in subsection (d) reasonably means the seller’s cost information. Thus, in future transactions, if the buyer possesses the seller’s cost information for a property, which is either the seller’s cost of constructing the property or the seller’s cost of acquiring the property in an arm’s length transaction from the previous seller, then the Department will value the facility “based on the seller’s cost as if there were no change in ownership, except for land as provided in subsection A, paragraph 1.” A.R.S. § 42-14156(A)(6)(d)(ii).
¶ 17 In the present case, Gila River acquired the facility during the original owners’ bankruptcy proceedings. The bankruptcy court found Gila River’s acquisition cost to be the total value of the land on which the facility operated, real property improvements to the facility, and personal property in the facility—amounts that were determined after an independent appraisal. Gila River then submitted its acquisition cost information to the Department for valuing the facility for tax purposes, and the Department accepted that information. Gila River then sold two power blocks and a 50% interest in the common generation facilities to Taxpayer. As part of the sale agreements, Gila River, another taxpayer, gave Taxpayer its book costs, which were its acquisition costs, consisting of the values of Gila River’s acquisition of the land, real property improvements, and personal property in an arm’s length transaction with the original owners. These are the same values Gila River submits to the Department to value the other 50% of the facility and which the Department uses for valuation purposes under subsection (d)(i). Because Taxpayer has the “seller’s cost information,” that is, Gila River’s cost of acquiring the real property improvements and personal property in an arm’s length transaction, the facility’s valuation for those properties should have been based on Gila River’s cost as if no change in ownership occurred, except for the land.
¶ 18 The Department counters that Taxpayer must possess the “original construction cost” for the real property improvements and personal property for the Department to value the facility under subsection (d)(i). At oral argument, the Department defined “original construction cost” as the “cost of the party first putting the property into service.” It reached this conclusion by examining a “number of factors,” including the definition of cost for personal property, which it argued “clearly speak to the origination, installation, transaction, privilege tax” and “define costs in the lenses ... of origination.” Under the Department’s argument, because Taxpayer did not possess the original cost information, the starting point for the valuation is the cost in an arm’s length transaction between Taxpayer and Gila River.
¶ 19 But the Department’s interpretation inserts into the statute a restriction that its plain language does not provide. The statute’s definition of “cost” states that it is either “the cost of constructing the property or acquiring the property in an arm’s length transaction.” A.R.S. § 42-14156(A)(6)(a) (emphasis added). Nowhere in the language of the statute does it limit the “cost information” to the “party first putting the property into service.” If the Legislature had wanted *345 to limit “cost” to the original construction cost, it was more than able to do so, see Powers v. Carpenter, 203 Ariz. 116, 118 ¶ 11, 51 P.3d 338, 340 (2002) (stating that if the Legislature had intended a statute to encompass more than indicated in plain language, the Legislature could have done so), like it did in A.R.S. § 42-14158. That statute’s language states that “[t]o achieve equity in the full cash values of existing and new generation facilities, the department shall compute adjusted original cost for existing generation facilities in lieu of actual cost for use in determining the full cash values in accordance with § 42-14156.” A.R.S. § 42-14158. Consequently, because “cost information” for the purposes of subsection (d) refers to the seller’s cost information regarding the construction cost or the cost of acquiring the property in an arm’s length transaction from the previous seller and because Taxpayer possessed this information, the Department should have valued the facility under subsection (d)(i). Accordingly, the tax court properly granted summary judgment in Taxpayer’s favor and denied summary judgment to the Department and the County for the 2014 and 2015 appeals.
2. Relation Back Under Rule 15(c)
¶ 20 The Department and the County next argue that the tax court erred in permitting Taxpayer’s amended complaint for tax year 2013 to relate back under Arizona Rule of Civil Procedure 15(c). We review de novo the interpretation and application of a rule of procedure. Pargman v. Vickers, 208 Ariz. 573, 576 ¶ 22, 96 P.3d 571, 578 (App.2004). Because Taxpayer did not make “a mistake concerning the identity of the proper party” as Rule 15(c) requires for relation back, the tax court erred in permitting Taxpayer’s 2013 amended complaint to relate back.
¶ 21 Arizona Rule of Civil Procedure 15(c) allows an amendment to relate back to the date of the original pleading if the claim asserted in the amendment “arose out of the [same] conduct, transaction, or occurrence.” The relation back doctrine of Rule 15(c), like the federal rule upon which it is modeled, balances a plaintiffs right to a decision on the merits “despite procedural or technical difficulties with a defendant’s right to be protected from stale claims and the attendant uncertainty they cause.” Pargman, 208 Ariz. at 576 ¶ 23, 96 P.3d at 578; see also Waltner v. JPMorgan Chase Bank, N.A., 231 Ariz. 484, 488 ¶ 18, 297 P.3d 176, 180 (App.2013) (“Federal cases interpreting federal rules of civil procedure that are similar to our rules are instructive and persuasive in construing our rules, and we subscribe to the principle that uniformity in interpretation of our rules and the federal rules is highly desirable.”). Rule 15(e) therefore ameliorates the effect of the limitations period when three conditions exist: (1) the claim in the amended pleading arose out of the conduct, transaction, or occurrence alleged in the original complaint; (2) within the specified time period, the prospective defendant received notice of the action such that the party will not be prejudiced in maintaining a defense on the merits; and (3) during the same period, the prospective defendant either knew or should have known that, but for a mistake concerning the proper party’s identity, the prospective defendant would have been named in the original complaint. Ariz. R. Civ. P. 15(c). Contrary to Taxpayer’s contention during oral argument before this Court, all three elements are necessary for an amended complaint to relate back to the date of the original complaint. See Tyman v. Hintz Concrete, Inc., 214 Ariz. 73, 74-75 ¶¶ 8-12, 148 P.3d 1146, 1147-48 (2006); see also Levinson v. Jarrett ex rel. Cty. of Maricopa, 207 Ariz. 472, 473 ¶ 1, 88 P.3d 186, 187 (App.2004); Pargman, 208 Ariz. at 581 ¶ 40, 96 P.3d at 579. The plaintiff bears the burden of establishing the requisite mistake. Tyman, 214 Ariz. at 77 ¶ 22, 148 P.3d at 1150.
¶ 22 We may decide this issue on the narrow question whether Taxpayer made a “mistake concerning the identity of the proper party” to satisfy the third element for Rule 15(c) relation back. Accordingly, we first address the Department and the County’s argument that Taxpayer’s “mistake” of not naming the County as a party was a mistake of law and therefore not a “mistake” as Rule 15(c) requires for relation back. A mistake is “a wrong action or statement pro *346 ceeding from faulty judgment, inadequate knowledge, or inattention.” Tyman, 214 Ariz. at 76 ¶ 19, 148 P.3d at 1149; see also Krupski v. Costa Crociere, S.p.A., 560 U.S. 538, 548-49, 130 S.Ct. 2485, 177 L.Ed.2d 48 (2010) (providing that a mistake is “an error, misconception, or misunderstanding; an erroneous belief'). The United States Supreme Court has provided the following example in explaining when a “mistake concerning the proper party’s identity” has occurred:
A plaintiff may know that a prospective defendant—call him party A—exists, while erroneously believing him to have the status of party B. Similarly, a plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the “conduct, transaction, or occurrence” giving rise to her claim. If the plaintiff sues party B instead of party A under these circumstances, she has made a “mistake concerning the proper party’s identity” notwithstanding her knowledge of the existence of both parties.
Id. at 548, 130 S.Ct. 2485. Thus, a plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue. Id. at 549, 130 S.Ct. 2485. The plaintiff may mistakenly choose to sue a different defendant based on that misimpression, but that “kind of deliberate choice does not foreclose a finding that [Rule 15] has been satisfied.” Id.
¶ 23 Accordingly, because Rule 15(c) requires a mistaken identification of defendants, the rule does not cover “making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties[, which] is the antithesis of making a mistake concerning the proper party’s identity.” Id.; see also Tyman, 214 Ariz. at 76 ¶ 21, 148 P.3d at 1149 (providing that the rule does not cover a “deliberate decision not to sue a party whose identity the plaintiff knew from the outset”). Similarly, the rule does not cover a mistake ‘Toy counsel regarding whom to name in a lawsuit,” which is “[w]here a plaintiff knows of the existence and identity of a defendant before the statute of limitations runs, and makes a conscious election about whom to sue, ... plaintiffs deliberate, though ultimately erroneous or unwise, tactical choice cannot be considered a ‘mistake’_” O’Keefe v. Grenke, 170 Ariz. 460, 465-66, 825 P.2d 985, 990-91 (App.1992). This is because, in such situations, the plaintiff did not take a wrong action from “faulty judgment, inadequate knowledge, or inattention”; rather, the plaintiff believed that the original defendant was not liable and was simply unaware of who was. See Tyman, 214 Ariz. at 76-77 ¶¶ 19, 23, 148 P.3d at 1149-50. Consequently, we “must determine, through reference to the original complaint, analysis of affidavits or other evidence submitted by the parties, and by applying common sense, whether the new defendant truly was omitted because of a ‘mistake concerning the identity of the proper party.’ ” Id. at ¶ 22 (citation omitted).
¶ 24 Here, although we share the tax court’s concern regarding the timing of the Department’s motion to dismiss, Taxpayer did not make “a mistake concerning the identity of the proper party” as Rule 15(c)(2) contemplates for relation back. Taxpayer had no misunderstanding, misimpression, or erroneous belief about the County’s status or role in centrally-valued property tax appeals versus the Department’s status or role in such appeals; Taxpayer merely made a mistake regarding whom to name in the lawsuit. The record shows that Taxpayer knew of the County’s role in centrally-valued property tax appeals before the relevant time period ended, but did not name the County as a defendant. Indeed, this does not “preclude [Taxpayer] from making a mistake with respect to the party’s identity.” Krupski, 560 U.S. at 549, 130 S.Ct. 2485. Instead, what forecloses Rule 15(c)’s ability to ameliorate the effect of the limitations period in this case was Taxpayer’s deliberate choice to sue the Department instead of the County while “fully understanding the factual and legal differences between the parties.” Id. This is the “antithesis of making a mistake concerning the proper party’s identity.” Id.
¶25 The oiiginal complaint, affidavits, other evidence, and common sense, Tyman, 214 Ariz. at 76-77 ¶ 22, 148 P.3d at 1149-50, establish that Taxpayer knew of the *347 factual and legal differences between the Department and the County. Notably, Taxpayer avowed that “[b]ecause the Department was the entity that made the valuation determination, Maricopa County ... was not involved in any stage of the valuation process or appeal.” Consistent with this position, Taxpayer distinguished the Department from the County on two other occasions in explaining why the County was not a necessary party. In both its response to the Department’s motion to dismiss and its reply in support of its motion for leave to amend the complaint, Taxpayer argued that because it “has not yet paid the taxes contemplated by the Department’s valuation and thus [Taxpayer] does not presently seek a refund from Maricopa County,” the County was not a necessary party.[1]
¶ 26 More importantly, nothing in the record indicates that Taxpayer had any faulty judgment, inadequate knowledge, or inattention causing it to mistakenly identify the Department’s status for that of the County or that Taxpayer knew generally what the Department did while misunderstanding the roles the Department and the County played in the transaction giving rise to Taxpayer’s claim. On the contrary, the record shows that Taxpayer knew full well the distinction between the Department—the entity that values its facility for taxing purposes—and the County—-the entity that collects the tax and the entity from which Taxpayer would, if it had paid the tax, seek the refund.
¶ 27 Taxpayer countered at oral argument that Rule 15(c) means “as long as there is a mistake in suing the proper party” then a mistake has been made. But this argument fails for two reasons. First, the language of the rule does not refer merely to a general “mistake,” but a specific mistake “concerning the identity of the proper party.” Ariz. R. Civ. P. 15(c). Reading the rule as Taxpayer posits would render parts of the rule’s language superfluous. See City of Tucson v. Clear Channel Outdoor, Inc., 218 Ariz. 172, 183 ¶ 33, 181 P.3d 219, 230 (App.2008) (“We avoid an interpretation that makes ‘any language superfluous or redundant.’ ”). Second, the United States Supreme Court and Arizona courts on numerous occasions have elucidated the meaning of a mistake regarding the identity of the proper party. See, e.g., Krupski, 560 U.S. at 548-52, 130 S.Ct. 2485; Tyman, 214 Ariz. at 76-77 ¶¶ 19-23, 148 P.3d at 1149-50; O’Keefe, 170 Ariz. at 465-66, 825 P.2d at 990-91. If that concept was as simple as Taxpayer posits, the courts’ analysis in those cases would have been unnecessary.
¶ 28 Taxpayer also counters that had the Department raised the issue of the County’s being a necessary party to the appeal earlier, Taxpayer would have “immediately sought to amend the Complaint to add the County as a party.” We reject Taxpayer’s position because it imposes on the Department a responsibility found neither in case law or statute and for which Taxpayer has provided no legal foundation. Instead, A.R.S. § 42-16208(A)(1) provides that “the appellant shall name as defendants ... [i]n an appeal by the taxpayer involving property that is valued by the department, both the department and ... the county in which the property is located.” (Emphases added.) Accordingly, the statute’s plain language provides that Taxpayer, as the appellant, had to name both the Department and the County in its appeal.
¶29 Taxpayer further counters that because of the statutory requirement that counties in which facilities are located be named as defendants in tax appeals, the County knew or should have known that it would have been named, but for a mistake, as opposed to a deliberate, tactical choice on Taxpayer’s part. But we need not examine whether the County knew or should have known that it would have been named a party but for Taxpayer’s mistake, or the other elements for relation back under Rule 15(c) for that matter, because Taxpayer has not met its burden of establishing that it made a “mistake concerning the identity of the proper party.” See Ariz. R. Civ. P. 15(c). *348 Consequently, Rule 15(e)’s requirements cannot be satisfied here when “the original complaint and the plaintiffs conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a fully informed decision.” Krupski, 560 U.S. at 552, 130 S.Ct. 2485. Accordingly, the tax court erred in allowing Taxpayer’s amended complaint for tax year 2013 to relate back to the date of the original complaint.
3. Attorneys’ Fees and Costs on Appeal
¶ 30 Taxpayer requests attorneys’ fees and costs incurred on appeal pursuant to A.R.S. § 12-348(B)(1) and upon compliance with Arizona Rule of Civil Appellate Procedure 21. Because Taxpayer is the prevailing party in the tax year 2014 and 2016 appeals, we grant its request with regards to those appeals upon compliance with Rule 21.
CONCLUSION
¶ 31 For the foregoing reasons, we affirm with respect to the 2014 and 2016 appeals, but reverse with respect to the 2013 appeal.

. Taxpayer contended at oral argument that this position was merely “an argument [it] made to the court below to save [itself]” and that this Court should disregard that position. But our review of issues presented on appeal requires us to examine and accept the accuracy of the record as established by counsel during the trial court proceedings. See Tyman, 214 Ariz. at 76-77 ¶ 22, 148 P.3d at 1149-50.